RAUN v. REYNOLDS et al.   (Nos. 2754, 2742.)

UNDER a decree of foreclosure and sale, H. had come into possession of the mortgaged premises. Subsequently, on appeal to the Supreme Court, the decree was reversed, with directions that the sale under it be set aside, that defendants in the suit be restored to the property sold, and that the Court below should proceed to dispose of the case in pursuance of the principles of the opinion. The Court below, on filing the *remittitur*, entered a decree setting aside said sale, restoring defendants to possession, directing plaintiff to deliver up possession ; awarding a writ of restitution, in case of refusal, vacating the credit given on the decree of foreclosure—the plaintiff having bought in the property—and ordering an account of the rents and profits of the premises while in the hands of H., with an injunction pending the account. *Held*, that the order by the

Court below for an account of the rents and profits, was right; that the general direction by this Court to the Court below, to proceed in pursuance of the principles of the opinion of this Court, was mere formality, neither giving authority, nor limiting the power of the Court below; that without such directions that Court could act only in subordination to the principles declared by this Court; that the question of rents and profits being left open by this Court, indicated that it was to be passed on by the Court below; that there is no distinction as to the right to have the *corpus* of the property restored on reversal of the decree under which it was sold, and the restoring of the rents and profits received from its use; and that the restitution of both is essential to making the party whole.

Where a party gets into possession of property, as a water ditch, under a Sheriff's sale on foreclosure of a mortgage, and the judgment on which such sale was made is afterwards reversed by the Supreme Court, and restitution of the property is ordered, the Court below may, on motion, order such party in possession to account, before a referee, for the rents and profits received by him—that is, for the sales of water, etc. The right to such rents and profits being clear, the Court will not, on a mere question of remedy, compel a direct suit for them.

The common law method, in such cases, of an inquisition of damages by a Sheriff's jury on the writ of restitution, would be impracticable, in estimating the rents and profits of a water ditch—involving, as the inquiry would, the receipts from sales of water every day for a long period, as also payments, expenses, etc. This is in its nature an equity proceeding—at least, to be disposed of according to equity practice.

The party so in possession, under Sheriff's sale, is in no better position than if he entered directly under the mortgage, to enforce which the sale was made; and having received the proceeds of the property by way of sales of water, and appropriated the same to his own use, he cannot hold the property bound by the mortgage, and at the same time refuse to give the mortgagor the benefit of the amounts so received. In equity he is not a purchaser, but a mortgagor; and although the sale was not set aside until after the receipt of the rents and profits, still when it was set aside, the order took effect upon the relations of the parties as they existed before the sale—the mortgagors and mortgagee have the same rights they had before.

The foreclosure in this case did not merge the mortgage—at least, for all the purposes of this question as to accounting for the rents and profits. H. or his assignee was as much mortgagee after the decree as before. The reversal of the decree would not affect the mortgage, and if H. had entered into possession after the decree, but before any sale, he would have been bound to account for what he received as mortgagee. Possibly the lien of the mortgage might have been destroyed by the judgment, but the mortgage was not destroyed, nor the relations of the parties as mortgagor and mortgagee.

APPEAL from the Eleventh District.

For the facts, see the opinion on the present appeal, and also the

Raun v. Reynolds.

opinion rendered at the January Term, 1860. In addition to the decree of the Court below, as stated in the opinion herein, that Court, Feb. 22nd, 1860, ordered that all further proceedings, judicial or ministerial, for the collection or enforcement of the decree of foreclosure and sale made Feb. 11th, 1858, be enjoined, pending the reference to take the account of rents and profits; and that plaintiffs show cause why the amount of such rents and profits received by them from time of sale to date, should not be credited on the judgment against defendants. Defendants were restored to possession of the property. Plaintiff Raun, and Harris, take two appeals, one from the decree setting aside the sale, awarding restitution, vacating the credit upon the former decree of foreclosure, and appointing a referee to take account of rents and profits, the other from the order enjoining them from enforcing the original judgment against defendants, and requiring them to show cause why the rents and profits should not be credited thereon, and also from the order directing the account. Both appeals were, by consent, considered together.

*Heydenfeldt*, for Appellant Harris.

1. Although a Sheriff's sale may be set aside by the summary remedy of a motion, a party cannot be called upon in this form to account for rents and profits; they must be recovered by suit. (*Cummings* v. *Noyes*, 10 Mass. 433.)

2. Equity has no jurisdiction to compel an account for rents and profits, when there is a legal title to the land and no trust. (1 Bacon's Abr. Accompt, 46.)

3. Harris was a purchaser at Sheriff's sale, and not a mortgagee in possession. In this State, a mortgagee cannot acquire possession by virtue of the mortgage. After decree of foreclosure, the mortgage is merged in the decree. Upon the setting aside the sale, Harris occupies the position of any other purchaser.

4. Payment of a judgment and decree cannot be predicated upon a claim for rents and profits, accruing under a wrongful possession of land. They would constitute mere set-off, at most, and probably, not that; for perhaps the remedy for their recovery rests in trespass.

*Winans*, also for Appellant Harris.

I. The appeal by defendants, which was before this Court at the January Term, 1860, was simply from the refusal of the Court below

to set aside the sale, and restore them to possession ; and the decree of this Court, reversing and remanding for judgment, in pursuance of the principles of the opinion, must have application alone to the point of the appeal, to wit: setting aside the sale, and restoring possession. " The principles of the opinion" do not declare that defendants are entitled to possession ; the sale is directed to be set aside, but this does not involve the right to have possession restored. Title may be in one, and right of possession in another. At all events, Harris had a right to have an issue, as to possession, tendered him by a new suit, or by petition, or by some proceeding in Court. He was a stranger to the record, and came in as purchaser after foreclosure and sale.

II. If the foregoing views are incorrect, still the Court below erred in making a decree for the issuance of process against Harris to amove him from possession. Conceding the rule to be that Courts of law and equity, by their final judgments and process, in restoring possession of the realty, can not only affect parties, but their privies also ; still the privity which is subject to that rule must have originated prior to the judgment in the case, and not be one of subsequent occurrence.

Harris is not a party to this action, nor does he occupy any position of privity to a party, which subjects him to the evicting process of the Court. The parties to this suit are Raun, as plaintiff, and Kirk and Reynolds, as defendants. Harris had no connection whatever therewith, even incidentally, (and all the connection he ever had has been incidental) until after the judgment had been rendered herein, determining the indebtedness to Raun, the plaintiff, and ordering a sale, and such sale had been made. So far as the appeal from that judgment to this Court was concerned, Harris was no party thereto. It still existed between the original parties, and resulted in modification, not reversal.

Harris has never been substituted as a party in this cause in place of Raun, and has no connection whatever with the judgment therein, determining the indebtedness and directing a sale. The very interest which Harris acquired in the property, was purchased subsequently to the decision of this cause. He cannot, therefore, be affected by any process issued herein, for the enforcement of the rights determined by the judgment. If he occupies any position at all adverse to the rights of the defendants, it is that of a trespasser, who only can be reached by the appropriate legal remedies. As against him, defendants have no equitable rights whatever which belong to this suit, are involved in its issues, or enforceable by its process. In the analogous

case of proceedings in ejectment, the judgment is only evidence of a right to enter as between parties and privies, and can only be enforced to that extent by process. (*Jackson* v. *Haviland*, 13 Johns. 234; *Kirshaw* v. *Thompson*, 4 Johns. Ch. 609.)

III. The Court below erred in directing the issuance of a writ of restitution; and a writ of restitution having been issued, and defendants placed in the possession thereunder, the whole proceeding is void and should be set aside.

It was the former rule upon a bill of foreclosure, that the plaintiff not being in possession, the Court would not put him in possession, but left him to his action of ejectment. (*Sutton* v. *Stone*, 2 Atk. 101.) This rule, however, was relaxed subsequently, to the extent that when the defendant refused to deliver possession, the Court would issue an injunction to enjoin delivery, and on proof of service of injunction, and refusal to comply, then issue its writ of assistance. (*Kirshaw* v. *Thompson*, 4 Johns. 610; *Valentine* v. *Teller*, 1 Hop. 422.)

Now, the Court of Chancery has no other means of enforcing a decree for delivering up an estate, than by resorting to a writ of assistance. (Adams' Equity, 691, 692; *Valentine* v. *Teller*, 1 Hop. 423.) And that writ, we submit, can only be issued where resistance has been made. See also, 1 Barb. Ch. 441, where the principle is declared, that a "writ of assistance is the only process for giving possession under a decree."

Now in the present case, not only were the necessary preliminaries neglected, but no writ of assistance was asked for or procured; on the contrary, the defendants asked for and obtained a writ of restitution, under the decree made therefor by the Court below, and through such writ procured the Sheriff to evict Harris, and invest them with possession. True, the decree authorized a writ of assistance, but they did not procure one.

*Crockett & Crittenden*, for Respondents.

1. Are Reynolds and Kirk entitled to the rents and profits during the time Harris held the property? This seems to be settled in the affirmative, by the opinion of this Court, in this very case; for this Court holds there had been, so far as the sale was concerned, a complete reversal of the judgment under which it was made, and that "a party obtaining through a reversed judgment, before reversal, any advantage or benefit, must restore what he got to the other party after the reversal."

Here, under this reversed judgment, Harris obtained the benefit of all the rents and profits, and after the reversal, must make restoration to the defendants.

The principle upon which this Court decreed restitution of the property was that of restoring the parties to their original positions, and subjecting neither of them to any loss. Applying that principle, Harris must account for the rents and profits, otherwise he will be receiving a double payment of his debt—once, out of the rents and profits, and a second time, through a sale of the property, while Reynolds and Kirk will suffer loss by being subjected to this double payment.

2. Are the rents and profits to be credited on the mortgage, or are they the subject only of an independent action? (See *Tirrell* v. *Merrill*, 17 Mass. 117; *Eaton* v. *Simonds*, 14 Pick. 98; *Tucker* v. *Buffum*, 16 Id. 46.) *Cummings* v. *Noyes*, 10 Mass. has no application. It was an action at law—with the reversal of the judgment in ejectment, the jurisdiction of the Court in this case terminated.

This is a foreclosure of mortgage; a case in equity. The power of the Court exists, and may continue to be exercised over the whole subject matter until justice is completely done to all parties. There was a debt due from the defendants to the plaintiff. The plaintiff has, under the error of the Court, been permitted to take the rents and profits of the defendants' property, and has thereby become a debtor to defendants in a matter immediately connected with the subject of litigation. The plaintiff is attempting to enforce the payment of his claim, without giving to the defendants the credit to which they are entitled. He is seeking to sell the property of the defendants, claimed to be a security in his hands, when, out of that very security, he has realized the full amount of his demands. All this is inequitable.

What is the position of Harris in reference to these rents and profits? It is contended that he was a purchaser at Sheriff's sale, and not a mortgagee. In contemplation of law, he is not a purchaser, because the sale was illegal, and has been absolutely annulled, and both parties restored to their former positions. Then what was he? Necessarily the mortgagee. It was suggested that no assignment of the mortgage had been made to him by Raun. But the assignment of the debt and the decree of foreclosure was, in legal effect, an assignment of the mortgage. It is said, that after the first decree of foreclosure, the mortgage was merged in the decree. But the only merger is,

that, the decree being valid and effectual, a second decree cannot be had to enforce the mortgage, if the mortgagor pleads the former decree. Yet, until sale, the plaintiff is none the less a mortgagee because of the decree. But the whole original decree was, in effect, reversed and annulled, because of the error, not only in respect to the manner of making the sale, but because it was for too large a sum, it having erroneously included compound interest. And the foreclosure must be considered, in its effect upon the relative rights of the parties, as made upon the day when it was in fact entered; hence the merger only took place upon entering the correct decree, and until that time, Harris was nothing but mortgagee in possession.

My proposition is, that until a valid and effectual sale, the mortgage continues, and the party is subject to all the responsibilities of the mortgagee, and liable to account for rents and profits as mortgagee, whenever he has got into possession. Moreover, there is an implied trust between the parties. In the case of an *Elegit*, where a judgment creditor has had his execution levied upon the real estate of the judgment debtor, it may often be necessary to take an account of the rents and profits, in order to ascertain whether, and when, the debt has been satisfied.

In Courts of Equity, the *Elegit* is held to be a mere security for the debt, and the tenant will be compelled to account for the rents and profits received, deducting reasonable charges. He is considered as trustee. (1 Story's Eq. secs. 510, 511; 2 Id. 1255.) This is a case in which property is held by way of security for a debt, and out of the property itself enough has been received by the creditor to discharge his debt. And where is the distinction between money realized by the creditor from a sale of the property itself, and money received from the property as income—the income, where possession is taken, constituting part of the security equally with the property itself?

This Court might have passed upon the question of rents and profits, and declared the right of Reynolds and Kirk to restitution to what they had lost as income or rents and profits, and directed the Court below to take an account. Instead of so doing, it submitted the matter to the Court below, and that Court has recognized the right, and proceeded to ascertain its value.

3. If these rents and profits are to be considered as a payment, are they to be ascertained and credited in the mode adopted by the District Court? To state this inquiry, is to answer it in the affirmative.

When we applied, in this very action, for restitution, it was contended that we could not proceed by motion, but must bring an action. In answer to the objection, this Court said: " The authorities seem to be the other way, and we see no reason why, in this class of cases, there should be an exception to the usual and recognized authority of the Courts to prevent or remedy an injurious and illegal execution of the process of its officers." (See former opinion.)

Can any reason be perceived why the Court should not, on motion, stay a sale under a satisfied judgment or decree? It is every day's practice, of all Courts, to do so; indeed, it is the only mode in which relief can be given. The defendants cannot have an injunction. (*Dedrick* v. *Hoysradt*, 4 How. Pr. 350; 2 Paige, 26; Hoffman's Pr. 89; 1 Clark, 307; 13 Barb. Ch. Pr. 619.)

As to the argument that restitution was not ordered, we say the principles of the former opinion decided that question, or nothing; it was held that Harris occupied Raun's position, and was the real party. As to Harris' having acquired title from some other person than Raun, and therefore should not have been ejected, the answer is, this, if true, should have been set up by Harris against the first application of defendants to be restored to possession.

Reynolds and Kirk had applied, as owners, to be restored to their possession; they showed Harris to be in possession as purchaser of the decree, and under the Sheriff's sale, and not otherwise, and they brought Harris into Court to meet these very allegations.

This Court passed upon the case presented, and determined the rights of the parties, that is, it laid down principles from which it conclusively followed that Reynolds and Kirk were entitled, as against Harris, to be restored to the possession of the property, and had adopted the proper mode of obtaining restitution, and it authorized the Court below, not merely to enter a decree recognizing the right, but to give all the benefits of the right to Reynolds and Kirk; in other words, to make restitution, and to do all acts necessary to replace the parties where they stood before the illegal sale.

And this answers the second objection of Mr. Winans, that the Court should not have issued process against Harris. If not against Harris, against whom could it have issued? Not against Raun, for he was not in possession. Restitution was demanded against Harris. He was the party who resisted the application. He was the party adjudged by this Court to make it; and he was decided, by this Court, not only to be privy to, and bound by, the proceedings, but to be in law the plaintiff himself.

*Winans*, in reply, among other points, made the following:

1. If the intermediate profits are due defendants, such indebtedness exists in the nature of unliquidated damages, and these cannot be set off. (Barb. on Set-Off, 79; 6 Term, 488; 1 Cowp. 56; 8 Cow. 304 *et passim; Naglee* v. *Palmer,* 7 Cal. 544; 3 Johns. Ch. 351; 4 Id. 292; 3 Mason, 138; 5 Id. 201.) These profits are not rents. Rent is a thing certain. (See also, *Higgins* v. *York Building Co.* 2 Atk. 107.)

2. The argument of respondent is based upon the assumption, that Harris occupies the position of a mortgagee in possession. But there is no analogy between the position of Harris and that of a mortgagee in possession. The latter is a mere creditor of the mortgage debtor, holding his mortgage as security for the payment of the debt, and the object of his entry is to enable him to realize the whole, or a part thereof, from the rents and profits, which of course, as they are received, are *pro tanto* payment of the debt. The whole object of the mortgagee is to receive, and the whole function of the estate is to discharge his debt. On the contrary, in the present case, the mortgagor owed no debt to Harris, who was merely the purchaser of the property for a valuable consideration after a sale made under the foreclosure; which sale was supposed to be regular, and the regularity whereof was then undisputed by respondents, either through the medium of a stay of proceedings, or of an appeal. Harris was a third party, a stranger to the transactions between the mortgagor and the mortgagee, having no debt against the former—no notice, or means of acquiring notice, that the sale was irregular, or that the mortgagor questioned its validity; and his sole object was to purchase and obtain possession of the property. He merely took an assignment of the judgment as a collateral protection to his title; the defendants being notoriously insolvent at the time. Moreover, the mortgage was merged in the foreclosure. "A decree of a Court of Equity for the foreclosure of a mortgage extinguishes the lien of the mortgage." (*People* v. *Beebe,* 1 Barb. 379.)

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. and COPE, J. concurring.

The history of this case and most of the facts upon which the questions rest, appear in the opinion rendered at the January Term, 1860. After the case had been returned to the District Court, the proceedings were taken which are the subjects of present review.

Raun *v.* Reynolds.

The original opinion and judgment of this Court affirmed the right of Kirk and Reynolds to claim that the sale made under the decree of foreclosure of the mortgage executed to Raun should be held for naught, and that they be restored to the property sold. The question as to rents and profits received by Harris between the sale and the reversal, was not passed upon. The general direction upon the reversal of the judgment was, that the District Court should proceed to dispose of the case remitted, in pursuance of the principles of the opinion. The District Court, upon the filing of the *remittitur*, proceeded to enter a decree, setting aside and annulling the sale which had been made, restoring the defendants to the position, rights, franchises and estates of which they had been deprived, directing the plaintiff to deliver up possession to the defendants, awarding a writ of restitution upon refusal, vacating the credit upon the former decree of foreclosure, and appointing a referee to take an account of the rents and profits of the property while in the hands of Harris.

The directions of this decree, except the last one, are in express accordance with the decision of this Court. In respect to this last direction, which involves the question of the rents and profits, no express decision was made here; and the question was left open, not because we felt any serious doubt upon it, but because the amount involved was considerable, and the point had not been fully argued.

The general direction to the lower Court, to proceed in pursuance of the principles announced in the opinion, is a mere formality, which, of itself, neither gives authority nor limits the power of the inferior tribunal. Without such direction, the principles being adjudged, the same duty would devolve upon that Court. It could legally act in no other manner than in subordination to the principles declared by the superior tribunal. But the order in this case was for a decree by the Court below upon the facts as they appeared here; but this order did not prevent that Court from taking such a course of proceedings as would give full effect to the *principles* of the opinion of this Court; and the fact that this question as to the rents and profits was left open, sufficiently indicated that it was to be passed upon by the Court below, as that Court might consider accordant with the principles decided here. The District Judge has, accordingly, acted in the matter; and the propriety of his action is now the matter before us.

1. We can see no reason for holding a distinction as to the respondents' right between the restitution of the *corpus* of the property, and

the restoring of the rents and profits received from its use. These, indeed, are but the income and revenue issuing from the property. The principle of our former decision was, that upon the reversal of the judgment under which the sale was made, the defendants, whose property was improperly sold, were entitled to be restored to the position which they occupied before, or would have occupied but for such sale; that the equity of Kirk and Reynolds was to be made whole in respect to this matter; and this, it is evident, could not be done without the surrender by Harris of what he received by the use of the premises, after deducting proper credits. In order to this end, it is necessary that an account should be taken of these rents and profits, and this has been ordered.

2. The first point taken by the appellant is, that although a Sheriff's sale may be set aside on motion, a party cannot be called upon in this form to account for rents and profits, but these must be recovered by suit. We were impressed by this argument when urged at the bar; but we think, on a more full examination, that it is not sound when applied to the facts of this case. Upon a mere question of remedy, the right being clear, we do not feel inclined unnecessarily to complicate and prolong this protracted controversy by affirming a right, and then doing justice piecemeal by sending the petitioners to another forum for the determination of this matter of account, especially as the account in this case determines nothing more than the amount received by Harris from the property, and therefore may be considered not so much as compensation, as restitution of what he actually got by the use of this property—as by sales of water, etc.

The opinion disposes of the question of the power of the Court in this way to order restitution of the property in *specie*, and we cannot see why a distinction should be made in a case of this sort, between the power to restore property taken, and the power to restore money received by or from sales of the property, or of parts of it, as water.

The case of *Cummings and Wife* v. *Noyes* (10 Mass. 433) is relied on by the appellant. In that case it was held that the tenant, in a real action, against whom judgment has been rendered, may, after a reversal of such judgment by writ of error, maintain assumpsit for the mesne profits against the original demandant or his executors. Jackson, J. delivering the opinion of the Court, said: "There is no doubt of the plaintiff's right to recover the value of the mesne profits taken by the defendant, by virtue of the first judgment, which was afterwards

reversed. The award or entry on reversal is that the plaintiff in error be restored to all things which he has lost by the judgment aforesaid; or, in case of a real action, it may be more particular, viz: That he be restored to the tenements aforesaid, with the appurtenances, together with the issues and profits thereof received in the meantime between the judgment aforesaid and reversal thereof, and to all things, etc. At common law, a writ of restitution then issues to the Sheriff, commanding him to restore the plaintiff in error to his seizin of the land, and also to inquire, by a jury, of the value of the issues and profits for the meantime; and the amount, when ascertained by this inquisition, to levy of the land and chattels of the defendant, and to pay the same to the plaintiff. This mode of recovering the mesne issues has never been adopted in this State. The inquiry of damages in other cases is always by a jury in Court, and not before the Sheriff; and indeed, the Sheriff never exercises this kind of judicial authority, except in certain cases, as of highways and mills, where he is specially authorized by statute. The only mode, therefore, under our laws, of ascertaining the value of the issues and profits, is by the verdict of a jury upon a trial in open Court."

In Massachusetts, we believe, the English Chancery system never prevailed. At common law, as would seem from the extract just given from the judgment of the Court, a proceeding nearly analogous to this before us prevailed. The Sheriff, by an inquisition of damages, proceeded to execute the writ of restitution, by ascertaining and levying the damages. In this case, in whatever form this action to recover these profits be brought, it would be impracticable for a jury to settle the account, at least, without great delay and embarrassment. The account must necessarily be a long and complicated one, involving, probably, an inquiry into receipts of every day for a considerable length of time, and also an inquiry into the payments, expenses, disbursements, etc., made. This is in its nature an equity proceeding, at least, to be disposed of according to equity practice—even if there were no circumstances which imparted the character of a trust to the tenure of Harris, who entered into possession of the property by virtue of a sale by the Sheriff, it is true, but that sale made under and n enforcement of a mortgage. It is forcibly argued that Harris is in no better position than if he had entered directly under this mortgage; that, having taken the proceeds of this property, which was bound by the mortgage, and appropriated them to his own use, he cannot claim to hold the mortgaged

Raun v. Reynolds.

property bound, and at the same time refuse to give the mortgagor the benefit of the amounts received from that property, which amounts go to diminish to that extent the value of the security, and which sums he could not have received but for this mortgage, and by a claim to enforce it; and that, in equity, it is wholly immaterial whether he used this mortgage property before or after the illegal sale of it; that he cannot claim to charge the mortgaged premises by his lien, and refuse to discharge them by money received from that property, and the assertion of his claim to it through the mortgage. If, without any sale of these mortgaged premises, he collected this money, by going into possession of the premises, or otherwise, it is clear that he must credit the debt charged on the property with what he so received; and we cannot see that the manner in which he entered—that manner being unwarranted—makes it any the better for him. He claims to be a purchaser, but in equity he was not a purchaser, but only a mortgagee. It is of no importance that the sale was not set aside until after the receipt of these rents or profits; when the sale *was* set aside, the order took effect upon the relations of the parties as they existed before the sale—the mortgagors and mortgagee having the same rights they had before. This leaves Harris, without any valid adverse claim, in possession of a portion of the mortgaged property pledged to pay the mortgaged debt, and hence the mortgagees have a right to call upon him to account for the sum so received.

Probably the principle might be even more broadly stated. When the mortgage is to be foreclosed, the controversy is to be settled upon equitable principles, and by these all the dealings of the parties, in connection with the mortgage or the mortgaged premises, are involved in the consideration and judgment of the Court. If the mortgagee has already derived from the mortgaged premises payment, or part payment of his debt, it would be inequitable to enforce the mortgage by a sale for the original amount of the debt. He must account, of course, for what he has got from the fund pledged to secure him, and it is not important how he got it. If he got it by contract, or the consent of the mortgagor, of course he must account; and surely he is in no better condition when he took without right, or by an invalid claim, than if he took justly and legally. If he went into possession, having no right to go in, as intimated before, he cannot insist upon his want of right to protect him in his acquisitions.

It is not very important, therefore, to consider the point so much

insisted upon, that the decree of foreclosure merged the mortgage. We think, for all purposes of this inquiry, it did not. Harris or his assignor was as much mortgagee after the decree as before, as will be seen from the suggestion that the reversal of the decree would not affect the mortgage, and that if he had entered into possession after the decree, but before any sale, he would have been bound to account for what he received as mortgagee. The lien of the mortgage might, *possibly*, have been destroyed by the judgment, as the counsel suggests, but the mortgage was not destroyed; nor the relations of the parties as mortgagor and mortgagee; if so, what would become of warranties of titles, estoppels, etc., contained in or wrought by the covenants and terms of the instruments?

The Court of Equity having jurisdiction of the mortgage suits should close the whole controversy, by settling and adjusting the accounts of these parties.

In view of these considerations, it becomes unnecessary to notice minor points. The District Court, upon the showing made, was right in its decree of restitution and for an account; and also in its order for an injunction, pending the taking of the account.

Perhaps the amount of the bond was not as large as should have been required. But on the coming in of Harris' answer, this objection may be remedied, upon a proper case, by the District Court.

The decree and supplemental order, in both cases of appeal brought here, are affirmed, and the proper entries will be made accordingly by the Clerk.