Raun *v.* Reynolds.

---

## RAUN *v.* REYNOLDS, ADMINISTRATOR, *et al.*

A JUDGMENT unreversed and not suspended may be enforced, but when reversed it is as if never rendered; and money collected by authority of it may, as a general rule, be recovered back.

H., as assignee of a judgment and mortgage, and Sheriff's certificate of sale thereunder of a water-ditch, sued defendant in the judgment for rents and profits between the sale and the expiration of the time for redemption, and had judgment for $8,150.   Defendant appealed.   The Supreme Court affirmed the judgment and the money was collected under it.   Before this affirmance the Supreme Court had reversed the judgment of which H. was assignee, and set aside the sale of the ditch on appeal in that case; but this reversal had not been made when H. recovered judgment in the Court below for rents and profits: *Held*, that defendant can recover back from H. the $8,150 received on his judgment; that the Supreme Court, on the appeal in the suit of H. for rents and profits, passed on the record as it stood when the Court below rendered judgment, and hence did not decide on the effects of the reversal of the original judgment assigned to H.; that this matter of reversal was not before

the Court, and as defendant could not set it up in the Court below—the reversal not then having been made—he is guilty of no laches.

*Held,* further, that as the equity of defendant to be restored to whatever he lost by the original judgment arose after the reversal, it is really a new cause of action; and even if this reversal could have been interposed in the suit for rents and profits, by way of plea or motion in the Supreme Court—a point not decided—still the failure to interpose it does not deprive defendant of the benefit of this new cause of action to regain what he had lost by the erroneous judgment.

H., as assignee of the purchaser at Sheriff's sale of a three-fifths interest in a water ditch, owned by the South Fork Canal Company, was in possession of this interest after the time allowed for redemption, and received the rents and profits thereof from the day of sale. The affairs of the company were managed by Superintendents—agents employed and paid by the Company. Afterwards the judgment under which the three-fifths interest was sold was reversed and the sale set aside, and H. ordered to account for the rents and profits received. While he was so in possession he gave considerable personal attention to the affairs of the Company, and during this time the Company, with the consent and advice of its members, made various reasonable and judicious improvements, and also bought another ditch, which enhanced the value and profits of the South Fork Canal: *Held,* that H. was not entitled, in the account, to compensation for his personal services, being at most but a tenant in common, one of several owners, and the company having employed competent agents to manage the property. ·

*Held,* further, that for the improvements made by the Company, and for the ditch purchased, allowance should be made in taking the account.

APPEAL from the Eleventh District.

Up to a certain point, the facts may be[*] found in *Reynolds* v. *Harris*, 14 Cal. 667, and *Raun* v. *Reynolds*, 15 Cal. 459. After the decision in 14 Cal. the case was returned to the District Court, where various orders were made, as stated on page 461, 15 Cal. and also orders appointing a referee to receive from Harris, his agents and employés, an account of the rents, issues and profits, together with a statement of the gross receipts and profits of the canals since the 11th of November, 1858, and report the same. Also, to take and report evidence touching the value of the rents and profits, independent of the showing and account made by the plaintiffs. Also, to take and report an account of the rents and profits, as well as the gross receipts of the South Fork Canal and Gold Hill Water Ditch, from the eighth day of March, 1858, to the eleventh of November, 1858, and also, of the rents and profits received by Reynolds since the eighth day of March, 1858, and not paid over

to Harris. Also, to hear, determine and decide the whole issue or issues arising upon or out of the matter of account between Harris, assignee of the plaintiff, and the defendants, as sought in the petition for an account filed by the defendants on the twenty-first of February, 1860, and to report a decree in accordance with the principles of the opinion of the Supreme Court. Also, to find and report whether any sum of money is now due to Harris from the defendants upon the judgment rendered on the eleventh day of February, 1858, as amended in the District Court on the fifteenth day of March, 1859, over and above the credits thereon, to which the defendants are in any way entitled, and if any sum is yet due to said Harris, to find and report the amount. Also, to find, determine and decide what sum of money, if any, is now due to the defendants from said Harris, on account of any excess of such credits over the amount of said judgment of the eleventh of February, 1858.

Also, on motion of the attorneys of Harris, the referee was ordered to report the amount of credits to which the defendants are entitled, the gross amounts of the plaintiff's receipts, the disbursements made by the plaintiff, the net amount of the plaintiff's receipts, the proper allowance to be made to the plaintiff for disbursements and repairs, and otherwise fully to decide and determine the questions of fact and of law involved in the subject matter and report thereon, pursuant to the judgment and opinion of the Supreme Court in *Raun* v. *Reynolds*, 14 Cal. 667.

After the decision in 15 Cal. 459, the case was returned to the District Court, and the account taken before the referee, who made the following report:

### FINDINGS OF FACT.

1st. That the Sheriff's sale of the South Fork Canal, under the judgment in favor of the plaintiff, in this cause, was made on the eighth day of March, A. D. 1858, and the time allowed by law for redemption expired on the ninth day of September, A. D. 1858.

2d. From the sale to the expiration of the time for redemption, $15,485.87 was the amount of dividends which came to the three-fifths interest in this controversy. Of this sum, $7,200 was received and retained by W. W. Reynolds, and 8,285.87 ultimately came

into the hands of L. B. Harris, (less the sum of one hundred and thirty-five dollars and eighty-seven cents, costs of Court and other legal charges).

3d. The *remittitur* from the Supreme Court in the case of *L. B. Harris* v. *W. W. Reynolds et al.*—the action brought to recover the rents and profits, pending the time for redemption—was filed in the Clerk's office of the District Court of the Eleventh Judicial District on the fourteenth day of July, A. D. 1859.

4th. L. B. Harris was put in possession of the three-fifths interest in controversy on the eighteenth day of September, A. D. 1858, by E. Bogardus, Sheriff of El Dorado county, under and by virtue of a writ of assistance, issued out of the Clerk's office of the District Court of the Eleventh Judicial District, for the county of El Dorado, dated the eighteenth day of September, A. D. 1858, said writ having been duly issued in this action.

5th. The judgment in this action was reversed by the Supreme Court on the eleventh day of November, A. D. 1858.

6th. The amount of dividends received by Harris, between the time when he went into possession of the three-fifths interest in the canals and the date of the said reversal of the original judgment in this action by the Supreme Court, was $1,770. Harris also received $1,500 on the fifteenth day of November, A. D. 1858, which were receipts from the canal prior to the eleventh day of November, A. D. 1858.

7th. Harris received as dividends, from and after the date of the reversal of the original judgment by the Supreme Court until the possession of the canal was restored to the defendants, $26,674.43. The monthly average of the same was about $1,778.29 calculating from November 11th, 1858, to February 25th, 1860, as fifteen months.

8th. The gross receipts of the three-fifths interest from the time Harris went into possession until the reversal of the original judgment by the Supreme Court were $7,156.83, and the gross expenditures for all purposes for said three-fifths interest were $4,703.13, during the same time.

9th. The gross receipts of said three-fifths interest from the date of the reversal of the original judgment by the Supreme Court

until Harris' possession ceased were $66,726.58, and the gross expenditures during the same time for said interest for all purposes were $35,825.35.

10th. The sum paid for repairs and wages during the time Harris was in possession was $68,199.30. These were all the expenditures upon the canal from the eighteenth day of September, A. D. 1858, to the twenty-fifth day of February, A. D. 1860.

11th. The number of officers and agents employed while Harris was in possession was sixteen, regularly. There were no more officers and agents employed during the time than were necessary.

12th. The average monthly wages paid to said officers and agents were about ninety-one dollars and seventy cents per month, and that average was less than the amount paid previous to Harris' coming into possession.

13th. The officers and agents were competent and faithful men, and performed their duties properly.

14th. There were no unnecessary repairs put upon the canal while Harris was in possession.

15th. In making repairs, expediency and economy were duly observed.

16th. The general condition of the canal at the time Harris came into possession was bad, and when he went out of possession the canal was in much better condition.

17th. A part of the canal was built in 1852, and part of it in 1853 and in 1854. Flumes in this climate require unusual and extraordinary repairs in six or seven years after their construction. The flumes on the South Fork Canal, Gold Hill and Weber Ditches, are from twenty-six to twenty-eight miles in length altogether.

18th. While Harris was in possession, the South Fork Canal Company purchased the Iowa Ditch, at a cost of some $1,500. They also bought a small reservoir and a water right in White Rock Cañon for fifty dollars. They also bought the "Zack Ditch," agreeing to pay therefor sixteen inches of water for two years, to be used exclusively on a mining claim owned by the former owners of said ditch. The water was valued at thirty cents per inch per day. The company also dug a ditch called the "Shingle Creek Ditch," at a cost of about five hundred dollars. While Harris

was in possession, the company also cleaned out the reservoirs and ditches at considerable cost.

The above mentioned expenditures for purchases and improvements were all judicious and calculated to enhance the value and profits of the canal.

19th. The said ditches were purchased and improvements made with the knowledge, consent and advice of the owners and members of the South Fork Canal Company.

20th. The waters of the South Fork Extension were leased to the Eureka Canal Company, while Harris was in possession, a part of the time. It appears, by the testimony, that 34,319 inches of water were furnished to the Eureka Canal Company. It does not appear how much money was realized by the South Fork Canal under and by virtue of said lease. The testimony, however, shows that more money was realized by the South Fork Canal Company under that lease than there would have been otherwise. Such leasing was judicious.

21st. The owners of the South Fork Canal, cotenants with Harris, were consulted touching the repairs and general management of the canal. That management was satisfactory to them. One of their number was superintendent of the canal, and was chosen with the approbation of the company.

22d. Harris personally bestowed upon the business and management of the company's affairs considerable attention. He is an experienced ditch man.

The testimony shows that such services as Harris rendered were worth between one hundred and one hundred and fifty dollars per month, exclusive of traveling expenses, had he been an ordinary employé.

23d. There was a change made in the price of water just before Harris came into possession. The price was reduced from fifty to thirty cents per inch.

24th. The average monthly gross receipts, while Harris was in possession, were ten or fifteen per cent. greater than they had been for the seventeen months just previous to his being put in possession.

25th. The general management of the canal while Harris was in possession was judicious and economical.

26th. Harris exercised all reasonable ordinary care and prudence in and about the management of the three-fifths interest in his possession, while he held it.

27th. $2,343.80, or thereabouts, were expended in litigation while Harris was in possession.

That litigation was necessary.

28th. The suit of *Geo. Gordon* v. *The South Fork Canal Co. et al.* was brought to recover upwards of the sum of $90,000, for work and labor done and materials furnished on the canal, said sum being claimed under a mechanic's lien. The attorneys originally employed for the defense of the action were Messrs. Crockett & Page (the firm now known as Crockett & Crittenden); they were employed as attorneys in the cause before Harris came into possession. Since Harris came in they have been paid $2,000. That sum was reasonably due them for their services.

29th. Treating the dividends received by Harris as payments made upon the judgment, at the end of the months of their respective dates, and making no allowance for any money coming from the suit of *Harris* v. *Reynolds et al.*, nor from the canal, prior to the date of the reversal of the judgment in November, 1858, there was due on the judgment in this cause of *E. T. Raun* v. *W. W. Reynolds et al.*, on the first day of September, 1860, the sum of $35,227.27.

30th. Crediting the amount received in the suit of *Harris* v. *Reynolds et al.*, to wit, $8,150, as a payment made at the date the remittitur in said action was filed in the District Court of the Eleventh Judicial District, in El Dorado county, there was due on the judgment in this case of *E. T. Raun* v. *W. W. Reynolds et al.*, on the first day of September, 1860, the sum of $19,935.11.

Treating said $8,150 as a payment made on said judgment at the time it passed out of the hands of the Clerk of the District Court, as testified to by Ogden Squires, to wit: in October, 1858, there was due on said judgment on the first day of September, 1860, the sum of $18,237.20.

31st. The amount of dividends from the sale to the expiration of the time for redemption, received and retained by W. W. Reynolds, as set forth in "Finding No. 2," to wit: $7,200 with inter-

est thereon to September 1st, 1860, is $8,857.50, which added to the sums specified in Findings Nos. 29 and 30, would increase those amounts respectively $8,857.50.

32d. Upon the basis of the calculation that the water leased or sold to the Eureka Canal Company should have realized to the South Fork Canal Company $3,132.13, not accounted for by Harris, the gross receipts of the South Fork Canal, Gold Hill and Weber Ditches would have amounted to $126,271.17 while Harris was in possession of the canal.

33d. It appears by the testimony that the average sum expended upon the canal since Harris went out of possession, to keep the work in running order, including all salaries, wages and repairs, but excepting improvements, is about $2,300 per month.

The average expenditures during the seventeen months that Harris was in possession, including wages, salaries, repairs and improvements, were about $4,000 per month.

34th. Upon the basis of the calculation that the cost of keeping the canal in running order should not exceed $2,316 per month, and crediting the dividends shown to be due Harris by such calculation, at the time of their supposed payment on the judgment; also reckoning the sum received from the Clerk of the District Court in the case of *Harris* v. *Reynolds et al.* at $8,215.12, and as having been paid and credited on the judgment in October, 1848, as set forth in Finding No. 30, Harris was overpaid on his judgment $4,989.05 on the eleventh of February, 1860.

From the foregoing facts, my conclusions of law are as follows:

That Harris, assignee of plaintiff, was not in possession of the premises in question as a wrong-doer, but as a mortgagee;

That said Harris is entitled to no salary or compensation for his services and superintendence, whilst in possession of the said premises;

That said Harris is bound to account to the defendants for all the moneys received by him from the canal and ditches in question, including those which were received as dividends while he was in possession as well as those which he recovered in the action brought by him for the rents, issues and profits pending the six months allowed for redemption; and that the same ought to be credited as

payments in this cause as follows, to wit: the dividends received by him while in possession ought to be credited as of the dates at which they were received by him; and the rents recovered by him in the action aforesaid ought to be credited as of the date at which the remittitur therein was filed in the District Court, to wit: on the fourteenth day of July, A. D. 1859.

From which it results that there was due Harris, assignee of plaintiff, upon his judgment in this cause, on the first day of September, A. D. 1860, after giving the credits aforesaid, the sum of $19,935.11, for which said Harris, assignee of plaintiff, is entitled to his execution or order of sale.

The foregoing report was confirmed by the District Court, and a decree entered that Harris, assignee of the plaintiff, have an order of sale or execution upon the judgment herein for $19,935.11, with interest thereon, as specified in said judgment, from the first day of September, 1860, as the balance due him upon said judgment.

Both parties appealed from this decree.

*Winans,* for Appellant Harris.

1. The $8,285.87 was recovered by Harris in a former action, (*Harris* v. *Reynolds,* 13 Cal. 514) the judgment wherein was affirmed by this Court. Under that judgment defendant paid the money to Harris. He cannot now recover it back, nor offset it against other claims of Harris, because: 1st, the former recovery was conclusive upon defendant in this action. It constitutes a *res judicata,* and settles every question therein determined or which might have been therein determined. (*Le Guen* v. *Goveneur,* 1 John's cases, 436; *Fishcli* v. *Fishcli,* 1 Blackf. 360; *Weathered* v. *Mayo,* 4 Tex. 387; *Parkhurst* v. *Sumner,* 23 Vt. 438; *Brickhead* v. *Brown,* 5 Sandf. [sup. c.] 134; *Foster* v. *Wells,* 4 Texas, 101; *Mitchell* v. *Mitchell,* 6 Md. 224; *Doty* v. *Brown,* 4 Comst. 71; *Tilton* v. *Gordon,* 1 N. H. 33; *Pierson* v. *Catlin,* 18 Vt. 77; *Hammond's lessees* v. *Julier,* 4 Md. 138; *Clary* v. *Hoagland,* 6 Cal. 685; *Soule* v. *Dawes,* 14 Id. 247; *Thatcher* v. *Gamner,* 12 Mass. 270.)

2. Money paid under a judgment—even though it be erroneous—cannot be recovered back. (*Tilton* v. *Gordon,* 1 N. H. 33;

*Walker* v. *Ames*, 2 Cow. 428 ; *Roth* v. *Schloss*, 6 Barb. 311 ; *Howes* v. *Aerg*, 12 Mass. 134 ; *Marriott* v. *Hampton*, 7 Term, 209 ; *Brown* v. *McKinally*, 3 Esp. N. P. 277 ; *White* v. *Ward*, 9 Johns. 232 ; *Cobb* v. *Curtis*, 8 Id. 470.)

3. Money paid under a mistake of law cannot be recovered back. · (*Clark* v. *Dutcher*, 9 Cow. 674, *et passim*.)

4. If the defendant could not recover this money back in case it were a voluntary payment, or in case it were a payment made under a mistake of law, or in case it were a payment made under an erroneous judgment; and if the recovery of the money by the plaintiff in the former action was conclusive upon defendant, how can defendant offset the money against the debt due by him to plaintiff? The statute in reference to counter claims or set-offs provides that they can only exist between parties between whom a several judgment might be had in the action, *i. e.*, a party defendant who can offset can sue for the claim which he sets up as an offset.

II.   Plaintiff being entitled to the $8,285 item, is also entitled by force of the same judgment to recover the $7,200 item, as that consists of rents and profits embraced in the judgment of *Harris* v. *Reynolds*, as received by Reynolds, but not paid over to Harris. Reynolds having received such rents and profits, and having been decreed by said judgment to pay them over, and not having done so, is still accountable to Harris for them ; and the amount thereof is properly chargeable against the credit allowed by the referee in favor of Reynolds.

III.   The referee erred in not allowing Harris for his services a reasonable compensation.   (Coote on Mort. 365, note *a ;* *Gilson* v. *Crehore*, 5 Pick. 140 ; *Miller* v. *Beverleys*, 4 H. & M. 417 ; *Winder* v. *Diffendeffer*, 2 B. Ch. 207 ; *Barrell* v. *Long*, 16 Mass. 228 ; *Dixon* v. *Homer*, 2 Met. 422.)

*Heydenfeldt*, also for Appellant Harris.

I.   There was error in compelling Harris to account for and credit the defendants with the sum of $8,285.87, which Harris recovered and received in the suit of *Harris* v. *Reynolds*.

II.   There was error in refusing to allow Harris $7,200, in the

hands of Reynolds, which Harris recovered in the suit of *Harris* v. *Reynolds*, but did not receive.

The matters in the foregoing assignments of error were *res judicatœ*, and could not be opened for reconsideration in a new controversy. (*Clary* v. *Hoagland*, 6 Cal. 685 ; *Chamberlain* v. *Carlyle*, 7 Fos. 50 ; *Soule* v. *Dawes*, 14 Cal. 247 ; *Brickhead* v. *Brown*, 5 Sandf. 134 ; *Foster* v. *Wells*, 4 Tex. 101 ; *Le Guen* v. *Governeur*, 1 Johns' Cas. 430 ; *Peirson* v. *Catlin*, 18 Vt. 77 ; *Rector* v. *Dombey*, 14 Ark. 304.) Money once paid upon a judgment recovered can never be recovered back. (*Marriott* v. *Hampton*, 7 T. R. 269, cases cited there ; *Walker* v. *Ames*, 2 Cow. 428 ; *Roth* v. *Schloss*, 6 Barb. 308.)

III. Harris is entitled to compensation for his labor, care and skill in conducting the business. The English rule is not in force in this country. (Coote on Mort. 365, note *a ;* *Gilson* v. *Crehore*, 5 Pick. 146 ; *Miller* v. *Beverleys*, 4 H. & M. 417 ; *Winder* v. *Diffendeffer*, 2 Bland. Ch. 207 ; *Barrell* v. *Long*, 16 Mass. 228 ; *Dixon* v. *Homer*, 2 Met. 422.) Mortgagee is trustee, and must be governed by the same principle. (Coote on Mort. 365, note *a ;* *Quarrell* v. *Beckford*, 1 Mad. 157 ; *Neale* v. *Hegthrope*, 3 Bland. Ch. 590.)

This case ought to stand upon its own facts. The reason of the rule in England is, that the mortgagee enters for his own benefit, and with full knowledge of the mortgagor's rights. Here, Harris entered without knowledge of the defendant's rights, supposing the property his own, which establishes a new equity in his favor. (*Meeson* v. *Jackson*, 4 Hare, 96.)

It was not a mere possession of real estate with perception of rents, but it was the carrying on of a regular business, which required skill, care and constant attention, and this is another equity in his favor.

The mortgagee in possession is only to account for what he receives, and not what he may have received by different management. (Coote on Mort. 345.) Mortgagee will be allowed for the cost of permanent improvements. (Coote on Mort. 344, 536 ; 1 Hilliard on Real Prop. 407 ; *Meeson* v. *Clarkson*, 4 Hare, 96 ; *Rawlings* v. *Stewart*, 1 Bland. 22, note *a ;* *Neale* v. *Hagthrop*, 3

B. Ch. 590.) The peculiar character of the property and of the business places the purchases made on the same footing as lasting improvements; they increased the value of the property, and also the rents and profits. If this is not so, then the account must be taken again. Harris must be allowed for the increased receipts accruing from the purchases; and the title to them must be decreed to be conveyed to him. (1 Hilliard on Real Prop. 407 ; *Moore* v. *Cable*, 1 Johns Ch. 385.)

*Crockett & Crittenden* and *John Hume*, for Defendants.

I. Notwithstanding the judgment by which Harris recovered the rents and profits from Reynolds, we claim that the money received by Harris upon that judgment has been rightfully applied as a credit on the mortgage.

It is true that a former recovery is conclusive upon every question determined or which might have been determined in the action ; but it is only conclusive upon that which was in issue, and where there is a decision on the merits ; and it does not affect a party where, from the nature or course of the proceedings, he could not avail himself of the same means of defense or redress which are open to him in the second suit. (Greenl. on Ev. secs. 524, 528, 529, 530 ; 1 Stark. on Ev. 199.)

The matter involved in this action was not in issue in the former suit ; there was no trial upon the merits of the claim now asserted ; and Reynolds was estopped, by the decree of foreclosure and sale, then unreversed, from asserting the right he now sets up. We do not seek to impeach the former judgment; we admit that Harris, as purchaser, rightfully recovered the rents and profits from Reynolds, as tenant in possession ; but the judgment under which the sale was made being now reversed, Harris is no longer purchaser, and Reynolds is no longer tenant in possession. The reversal altered the relations of the parties, and gave, as a new right, the right to restitution which we now claim. Though the money was rightfully recovered, Harris cannot retain it. (*Reynolds* v. *Harris*, 14 Cal. 680 ; *Whitcomb* v. *Williams*, 4 Pick. 228 ; *Minor* v. *Walter*, 17 Mass. 238 ; *Moses* v. *McFerlen*, 2 Burrowes, 1005 ; *Curtis* v. *Cobb*, 8 Johns, 469 ; *Lazell* v. *Miller*, 15 Mass. 207.)

By the erroneous, and now reversed decree, the defendants lost these rents and profits, and this Court has decided that they are entitled to be restored to *all* they so lost. (*Reynolds* v. *Harris,* 14 Cal. 679, 680; *Raun* v. *Reynolds,* 15 Id. 459.)

The mere mode of recovery by Harris cannot affect the right. If the defendants had paid the rents and profits voluntarily, beyond doubt Harris would now have to account for them. The right of the parties cannot be altered by the fact that the payment was upon compulsion. (*Raun* v. *Reynolds,* 15 Cal. 471.)

If a purchaser under his own judgment should bring suit, and recover in ejectment against the defendant in possesion, and afterwards the original judgment should be reversed, the judgment in ejectment would be no bar to a suit by the original defendant to recover back his land; because, as in the case now before the Court, the reversal gives a new right to restitution, and the fact, occurring subsequently, could not have been pleaded in the action of ejectment. The judgment obtained by Harris was a mere incident to, and consequence of the decree of foreclosure, and it fell with the decree. The whole case has been already determined by this Court in case No. 2742, *Raun* v. *Reynolds,* 15 Cal. 459.

II. As to the claim to the remainder of the rents and profits, the $7,200 received by Reynolds, Harris has not even the fact of a former judgment in his favor, immaterial as that fact would be. He asks now for a judgment, after all pretense of right has been taken away from him by the reversal of the original decree. This Court has furnished an answer to the claim by deciding that the defendants are entitled to be restored to all that they lost by the erroneous judgment. If entitled to be restored, certainly they are not now to be subjected to a new loss.

III. Harris is not entitled to any compensation for his services in managing the property, and there is no error in disallowing his claim. He was a mortgagee in possession, and, as such, has no right to compensation. The rule is so settled in England beyond all controversy. (*Coote on Mortgages,* 343 [m.] and cases cited, and 365.)

The cases referred to by the plaintiff's counsel do not support his proposition, that in America the rule is otherwise.

Raun *v.* Reynolds.

In New York, Kentucky and New Jersey, the decisions sustain the English rule. (4 Kent's Comm. 166; *Green* v. *Winter,* 1 John's, ch. R. 27; *Manning* v. *Manning,* 1 John's ch. R.; *Clark* v. *Robbins,* 6 Dana, 349; *Breckenridge* v. *Brooks,* 2 A. K. Marsh, 336; *Clark* v. *Smith,* Saxton, [N. J.] 121.)

Harris was not in actual possession of the mortgaged property. That property consisted of an undivided interest in ditches, which were owned and managed by a company. Harris had no more the possession, and no more right to charge for his services, than any other member of the company. The ditches were superintended by agents employed by the company, and Harris had nothing to do but receive his dividends out of the nett earnings. Harris was never employed by the company; and if he had been, the company, and not these defendants, should pay him.

If liable to Harris, the defendants are liable to every other member of the company.

No case goes the length of allowing compensation to a mortgagee, when the property was managed by a bailiff or agent, paid by the mortgagor. The present is a stronger case for the defendants, Harris, as mortgagee in possesion, having been a mere stockholder.

IV.    There is error in allowing Harris, as a portion of his expenses, money paid out in *improving* the property. The allowance should only have been for *necessary* repairs. (2 Story's Ev. sec. 1616, b. and note; *Godfrey* v. *Watson,* 3 Atkyns 517; *Clark* v. *Smith,* Saxton, [N. J.] 123; *Green* v. *Winter,* 1 Johns, Ch. 385; *Moore* v. *Cable,* 1 Id. 385; *Bell* v. *Mayor of New York,* 10 Paige, 73; *Quinn* v. *Brittain,* 1 Hoffmann, 353; *Dougherty* v. *McColgan,* 6 Gill & Johns, 276; *Hopkins* v. *Stevenson,* 1 J. J. Marsh, 341.)

V.    There is error in allowing Harris money paid for the purchase of the Iowa and other ditches.

VI.    The $8,150 should have been credited as a payment made on the 14th of October, 1858, the day on which the money came to Harris' hands.

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

On appeal and cross appeal.

This cause has been several times before this Court.  It comes now on appeal from the decree of the District Court confirming the report of referee to whom the accounts of L. Harris were referred ; Harris having taken possession of the interests in the ditch, the subject of the mortgage in the bill mentioned, and received certain moneys arising from sales of water, etc.

It is not necessary to state all the facts.  They will be found in 14 Cal. 667, and 15 Cal. 459.

1.  The main question made by the plaintiff below on this appeal is, that the District Court (affirming the action in this respect of the referee) charged Harris with the sum of $8,150, collected by him in pursuance of the judgment of this Court, in the case of *Harris* v. *Reynolds*.  This judgment was in a suit brought by Harris, as assignee of the mortgage and judgment of Raun, to recover the rents and profits from the defendant in the judgment accruing between the sale and the period allowed for redemption. The Court below gave judgment for the plaintiff in this suit for these profits, and this Court affirmed the judgment.  At the time of this judgment below, the decree reversing the former judgment under which Harris claimed was not made, nor the sale, of course, set aside ; though at the time of the affirmance of this Court, the reversal had been made of this first decree.  This matter of reversal of this first judgment was not brought into the case of *Harris* v. *Reynolds* as a plea or as a matter of defense ; nor, perhaps, could it have been.  This Court passed upon the record of *Harris* v. *Reynolds* as that record stood when the District Court passed upon it.  It affirmed the law upon the facts as they appeared on the record.  The defendants had no opportunity of waging this matter in the District Court ; they were guilty, therefore, of no laches in failing to set it up.  We could take no notice of it in passing upon the record in the last case ; for we could not go out of the particular case before us to find facts which might be supposed to influence our decision.  Our judgment of affirmance had relation to, and took effect upon the judgment of the Court below.  This Court merely declared, as a matter of law, that the District Court did not err in its decree upon the facts upon which it passed.  But this Court did not decide upon the effect of the

Raun *v.* Reynolds.

reversal, or upon the rights to which the defendants were entitled in consequence of that reversal. It does not follow because a party has a right, under a certain state of facts, to a judgment and the fruits of it, that he must necessarily be entitled to those fruits forever afterwards. A judgment, so long as it continues unreversed and unsuspended, may be enforced ; but when it is reversed, it is as if never rendered ; and money collected by authority of it may, as a general rule, be recovered back.

In *McClure* v. *Colclough,* 5 Alabama, 65, it was contended that a party having prosecuted a writ of error at law to reverse a judgment, which was affirmed by the Supreme Court, could not file a bill to set it aside on independent grounds from those assigned in the record of appeal. The Court say : " Our opinion is that the writ of error has no effect whatever as a bar, for ·it may be that it was prosecuted for errors which have no connection with the present aspect of the case, and it would be exceedingly onerous to hold a party concluded from the pursuit of one remedy by seeking another for a matter entirely distinct. The statute doubtless places the matter on its. true foundation, when it requires a release of errors to be filed before an injunction shall be awarded ; but there is nothing to prevent a party from testing any supposed error by taking his suit to an appellate Court, and afterwards, if the case warrants it, from seeking relief in equity."

Here the equity of Reynolds arose after the reversal, to be restored to whatever he lost by the judgment ; and this matter has not in any way been adjudicated against him. It is really a new cause of action ; and we are not able to perceive upon what principle Reynolds is precluded from setting it up. Even upon newly discovered evidence, Chancery sometimes interposes to give relief against a judgment ; but here was a *new fact* denying effect to the facts first passed upon, and the judgment based upon them. If the fact of this reversal could have been interposed by way of plea or motion in the Supreme Court—which we do not concede—still it is not at all apparent that the failure to interpose it would have the effect of denying the defendant the benefit of this new cause of action for the purpose of regaining what he had lost by the erroneous judgment.

2. We think there was no error in allowing for improvements made by the company upon the property.  It was the duty of parties in possession and the right of the company to protect it, and the improvements seem to be reasonable and the expenditure judicious.; nor do we think that the purchase of the Iowa ditch, under the circumstances, stands on a different footing.  There is no difference between buying this property and extending the work by making a similar improvement.  This work and the improvements seem to have been made by the company and not by Harris exclusively.

3. Harris was not entitled to compensation for his personal services.  It seems that at most he can be considered only as a tenant in common, or one of several owners; and superintendents and agents were employed competent to the management of the property.  Every other owner might make the same claim.

We think the referee has adjusted this claim upon the principles of equity, doing exact justice between the parties.  And we affirm the decree in all its parts made in pursuance of his report.