603 P.2d 995

Eldon I. HUTCHINS and Reynold L. Allgood, Plaintiffs-Respondents,

v.

STATE of Idaho, acting through Gordon C. Trombley, as State Land Commissioner, and as Executive Officer of the State Board of Land Commissioners, and as head of the State Board of Land Commissioners of the State of Idaho, Defendants-Appellants.

No. 12415.

Supreme Court of Idaho.

Dec. 5, 1979.

Wayne L. Kidwell, Atty. Gen., Warren Felton, Deputy Atty. Gen., Boise, for defendants-appellants.

James E. Morgan, Lewiston, Nick Chenoweth, Orofino, for plaintiffs-respondents.

PER CURIAM.

This action, before this Court for a second time, concerns mineral leases in Clearwater County, Idaho, which the State granted to the plaintiffs-respondents Hutchins and Allgood in 1965 and 1966. The plaintiffs, alleging that the State had harassed their possession of the leased premises in a number of ways and that it had unilaterally and improperly deleted certain lands from the leases, brought this action (Clearwater County No. 4096) primarily seeking a declaratory judgment of their rights.[1] On November 19, 1970, the district court granted part of the plaintiffs' motion for summary judgment, holding that the leases were valid and that the State could not legally delete any of the lands in the leases. The court granted summary judgment to the State on the rest of plaintiffs' claims, including that for damages.

The State appealed from the summary judgment; plaintiffs did not. This Court held that genuine issues of material fact existed, and that the summary judgment was therefore improperly granted: "The summary judgment is reversed, the order *pendente lite* dissolved, and the matter remanded to the trial court for further proceedings consistent with this opinion." *Hutchins v. Trombley*, 95 Idaho 360, 366, 509 P.2d 579, 585 (1973) (hereinafter *Hutchins I*). The trial court's summary disposition of the damage issue was not discussed.

Following the remand the plaintiffs amended their complaint to allege more specifically the damages caused by the

---

1. For a more complete statement of the facts, see *Hutchins v. Trombley*, 95 Idaho 360, 509 P.2d 579 (1973).

State for which they were seeking recovery.[2] The State thereafter filed an answer which included a counterclaim for damages. Before trial the parties and the court apparently agreed that the issue of recoverable damages would be tried later, and only if plaintiffs prevailed on the validity of the leases and the State's liability for damages.[3] After a trial before the court, the court held that the leases were valid, that no deletions had been or could be made therefrom, that the State had breached its duty as lessor, and that the State was liable for damages arising out of its breach. Proof of plaintiffs' damages was reserved for a second trial. Plaintiffs during the pleading stage had made the required request for a jury trial, but before any second trial took place the State appealed.

Seeing a question of appealability, we asked the parties for briefs on that issue. The State has acknowledged that its appeal may be premature, pointing out, however, that if the judgment which has been entered is appealable, the right to appeal might have been lost for the failure of a timely filing if it had not appealed. The State suggests it was a final judgment because: (1) the original 1970 district court judgment included an adjudication against the plaintiffs on the issue of their claim to

damages; (2) that portion of the judgment was not appealed from; (3) the 1973 Supreme Court decision did not overturn that part of the district court's summary judgment; (4) that part of the 1970 judgment is therefore res judicata. Thus, the State continues, the only issue which was left open on remand was the validity of the leases, which the district court has now ruled on. It follows, says the State, that since there remained nothing further for the trial court to consider, *i. e.*, damages, the judgment below is complete, final, and appealable. The State advises us, however, that the district court ruled against it on this contention, doing so on the basis that the entire summary judgment was reversed in *Hutchins I.*

The plaintiffs, on the other hand, contend that *this* action is solely one for declaratory judgment,[4] that issues of liability for damages and amounts recoverable were not before the court and were not considered. Plaintiffs argue that the appeal is proper because it is entirely separate and distinct from the separate action for damages, Civil No. 5963. Plaintiffs theorize that if the judgment now appealed from is upheld, they can move their proceedings for damages over into Civil No. 5963, and hence this

---

2. The prayer for judgment in plaintiffs' first cause of action in the amended complaint was as follows, in part:

   "FIRST: That Plaintiffs recover the sum of $11,932.03 paid on SAID LEASES including payments on Bonds, in addition to all future payments required until judgment is entered herein.

   "SECOND: That Plaintiffs recover the sum of $27,497.98 for money expended by Plaintiffs for examination and evaluation of the LEASED PREMISES in addition to all future payments required until judgment is entered herein.

   "THIRD: That Plaintiffs recover the sum of $12,375,000.00, INTRINSIC LAND VALUES with a credit thereon of the sum of $11,932.03 as specified in Paragraph FIRST of this prayer and with a credit thereon of the sum of $27,497.98 as specified in Paragraph SECOND of this prayer, which after the foregoing credits, results in the sum of $12,335,-569.99 in loss of INTRINSIC LAND VALUES, under this Paragraph THIRD of this prayer, all by reason of the acts of Defendants alleged in this Amended Complaint.

   "FOURTH: That Plaintiffs recover the sum of $50,000.00 attorney fees herein or such other or further sum as may appear warranted to the Court upon the hearing hereon."

3. The pre-trial conference order provided that the damage issue was not to be tried, that this case would be tried pursuant to the remand instructions of the prior appeal. The court stated in its findings of fact and conclusions of law that "it having been agreed upon between Court and Counsel for both parties, that the question of plaintiffs damages, if they are entitled thereto, be considered at a later trial."

4. Meanwhile, the plaintiffs in 1972 had filed another action (Clearwater County No. 5963) for damages allegedly caused by the State's harassment of plaintiffs in regard to the leases. Although the record is unclear, it appears that a motion to consolidate these two cases was denied. Case No. 5963 has apparently been held in abeyance pending the outcome of this case.

judgment may be considered final. They express no opinion on the res judicata effect of this judgment insofar as it determines the State to be now liable for recoverable damages, and are likely content to think that it may be.

It becomes necessary that we reconstruct the salient aspects of the previous appeal and proceedings in district court thereafter. The underlying question is the validity of the State's contention that the damage issue was adversely decided against plaintiffs by the grant of summary judgment, and not affected by this Court's outright reversal on the first appeal.

First, an examination of the pleadings and the motion for summary judgment in the first trial shows that damages were an issue, and although perhaps an issue not at issue, "no liability" was decided by Judge Hyatt.[5] Count XII in the complaint alleged that defendants were being damaged at least to the extent of $1,500 per day, and the fourth item of judgment prayed for sought "such other and further relief that the Court shall find to be warranted upon the hearing, . . . including judgment for such amount or amounts against such of the defendants as the Court shall find to be warranted . . . .." Plaintiffs' affidavit in support of the motion for summary judgment alleged that plaintiffs had been damaged and that plaintiffs should be awarded damages for (1) defendants' violations of plaintiffs' rights under the leases and (2) for damages caused by the prevention of plaintiffs from mining, including

"a. Such losses as they have suffered as are set forth in their Complaint on file herein.

"b. Such losses as they shall suffer by reason of the loss of any access to the leased premises

.    .    .    .    .    .

"c. Such further damages as the Plaintiffs may at this time, or in the continuing future . . . suffer by reason of Plaintiffs' inability to have begun such mining operations heretofore."

That part of the summary judgment in favor of the State denied plaintiffs any damages.

Next we consider how that summary judgment was affected by this Court's outright reversal on the first appeal. A perusal of the notice of appeal on that first appeal shows that the State intended to appeal from only a portion of the summary judgment. The notice of appeal provided that the appeal was taken "from the Summary Judgment . . . made and entered . . . in favor of the Plaintiffs . . . and against the Defendants." The denial of damages was, of course, in favor of the State, the defendant. The State's brief in *Hutchins I* sought reversal only of the "[S]ummary judgment in favor of the plaintiffs."

The only place where the State seems to have exceeded the narrow thrust of this assignment of error was in its reply brief, where it stated that "[t]he differences between Plaintiffs' Statement of Facts in its Brief and Defendants' Statement of Facts in its Brief are startling, to say the least, and could well lead one to wonder whether or not there were disputed factual issues in this matter which should have been decided by the District Court."[6] The State went on

---

5. We feel we should mention that we are unable to understand how Judge Hyatt ruled as he did on the damage issue in that summary judgment proceeding. It seems doubtful that liability for damages could be decided on a motion for summary judgment, especially where the leases were held valid. There is no discussion of the damages issues in the court's memorandum decision, but there is the court's determination therein ruling against the plaintiffs on their claim for damages. All in all, it seems that the proceedings in *Hutchins I* almost amounted to a trial on the merits waged

on affidavits. As pointed out in *Hutchins I* at 362 n. 1, 509 P.2d 579, the record then consisted of over 700 pages without the State having ever filed an answer to the complaint.

6. See note 5, *supra*. In *Hutchins I* the State did not once argue that the presence of disputed questions of fact precluded the entry of a valid summary judgment, nor was any authority cited for that proposition.

Taken with the above quoted statement, it seems as we say that the State did indeed think that the case had been tried on the merits,

to note in this connection that only the State had appealed, and that appeal was only from a portion of the final judgment.

This Court in *Hutchins I* specifically addressed only three matters: the order pendente lite, the summary judgment in favor of the plaintiffs, and the State's motion to dismiss.[7] These were the only matters actually passed upon: the order pendente lite was reversed, the summary judgment was reversed, and the denial of the motion to dismiss was upheld. The Court, although it did not discuss the judgment insofar as it was in favor of the State on the issue of damages,[8] reversed the entire summary judgment in general language: " . . . from our view of the record genuine issues of material fact do exist which prevent the entry of summary judgment as was done by the trial court." "The summary judgment is reversed." *Id.* at 365, 366, 509 P.2d at 584, 585.

■ When the cause was back in trial court after remittitur, the State there argued that only that portion of the summary judgment which it had appealed had been reversed. The State had not sought clarification or a narrowing of the general reversal through a petition for rehearing in this Court. Had it done so we believe that the same result would have obtained, simply because our reversal of the determination that the leases were valid resulted in there being no final judgment in district court—and with the action in that posture, the trial court was not limited by any findings or conclusions theretofore made, and which were no longer deemed correct. We agree with Judge Mosman's ruling that where this Court did not specifically take note of the State's position that it had only challenged a portion of the final judgment in *Hutchins I*, the cause was generally reversed and remanded—standing as it did before the summary judgment was entered.

This is so where the opinion in *Hutchins I* did not pass upon damages at all; hence law of the case did not come into play.

■ We note also that although it was permissible at the time of the first appeal, under I.C. § 13–202, to appeal from only a specific portion of a final judgment, this could not ordinarily be done when the issues were so interwoven that an appeal from one part necessarily brought the entire judgment up for review. " '[T]he part of a judgment from which an appeal is taken must be separable from the remainder, or, in other words, the part whereby the appellant is aggrieved must be so far distant and independent that it may be adjudicated on appeal without bringing up for review the entire judgment or order.' " *Stearns v. Strom,* 68 Idaho 392, 394, 195 P.2d 337, 337 (1948), quoting 8 Bancroft's Code Practice § 6267 (1928). In *Stearns,* the Court held that it could not give effect to either portion of the judgment without doing violence to the other, and that the judgment as entered was erroneous. "The two portions of this judgment, therefore, are so interdependent that the entire judgment is nullified and rendered nugatory." 68 Idaho at 395, 195 P.2d at 338. Similarly, in *Hampton v. Commissioners of Logan County,* 4 Idaho 646, 43 P. 324 (1896), this Court held that an appeal from "part of" a money judgment for a definite sum brought the entire record before the court as there was but one cause of action and the judgment was an entirety. *See also Porter v. Porter,* 84 Idaho 400, 373 P.2d 327 (1962).

■ From the facts of this case, it is apparent that the issue of damages was so interwoven with the issue of validity of the leases that a consideration of the former on a motion for summary judgment necessarily involved a consideration of the latter. The trial court could not be concerned with damages until it had first determined that

---

albeit on affidavits, interrogatories, and requests for admissions.

7. The Court also gave guidance relative to bringing a new action for injunctive relief and a change of venue, which advice was not acted upon.

8. The Court's statement that "[t]here is nothing in the pleadings . . . to indicate that any part of the relief sought was a judgment for a sum of money" was in reference only to the rentals under the order pendente lite.

the leases were valid. Since this Court held that summary judgment was improper and the lease validity issue had to be determined on the merits, it naturally follows that the trial court was in error in concerning itself with damages. Had the court allowed damages, any judgment therefor obviously would have fallen with our decision that the lease validity issue was a triable issue of fact. The determination of the damage issue was equally premature even though no damages were awarded. Only on a trial on the merits, after determining the validity of the leases, in light of the evidence which is introduced, could the court properly dispose of liability for damages. Then, in turn, the court could consider proof of recoverable damages if liability therefor was established.

We agree with Judge Mosman that all issues not passed upon by this Court were open to him at the second trial. After a general reversal, a trial court is free to correct any error in its original findings and conclusions *as to matters not passed on by the appellate court. Blinzler v. Andrews,* 95 Idaho 769, 519 P.2d 438 (1973).

"The findings of the trial court to which we have referred were not before us and received no consideration on this appeal. Upon remand, whether or not any mention of these findings had appeared in our opinion, they would be subject to review and revision by the trial court. 'A trial court may, after a remand for further proceedings, correct an error in its original findings as to a matter not passed on by the appellate court.' *Blinzler v. Andrews,* 95 Idaho 769, 519 P.2d 438 (1973). Such a correction in its findings may be made by the trial court without hearing new evidence. *Imperial Chemical Industries, Ltd. v. National Distillers and Chemical Corp.,* 354 F.2d 459 (2d Cir. 1965). If additional evidence is presented in further proceedings on remand, findings as to matters not passed on by the appellate court should be changed or modified in accordance with the trial court's determinations on the entire record. *William Goldman Theatres, Inc. v.*

*Loew's, Inc.,* 69 F.Supp. 103 (D.C.E.D.Pa. 1946).

"Upon remand of this case the trial court should determine its findings of fact and conclusions of law, with respect to the issues not dealt with in our opinion, on the basis of the record in the prior proceedings and such further proceedings as may be had, without being bound in any way by its prior findings and conclusions on such issues."

*Hulihee v. Heirs of Hueu,* 556 P.2d 920, 921 (Hawaii 1976). *Accord* 5 Am.Jur.2d *Appeal and Error* §§ 955–56 (1962); 5B C.J.S. *Appeal & Error* § 1964(c)(1) (1958). *See Stearns v. Norton,* 70 Idaho 435, 220 P.2d 1067 (1950); *De Hart v. Allen,* 26 Cal.2d 829, 161 P.2d 453 (1945).

Irrespective of such general rule, where a part of a final nonseverable judgment is reversed, a final judgment is thereafter not present, leaving a trial judge positioned so that he can modify any prior orders or partial judgments that have been previously entered, assuming non-application of the doctrine of law of the case. *See Bailey v. Proctor,* 166 F.2d 392 (1st Cir. 1948). *Cf. Dawson v. Mead,* 98 Idaho 1, 557 P.2d 595 (1976); *Baker v. Pendry,* 98 Idaho 745, 572 P.2d 179 (1977) (partial summary judgment and Rule 54(b)). Thus, after the reversal in *Hutchins I,* this case was back to where it was when the original improvident summary judgment was granted, and Judge Mosman was free to follow any procedure and retry any issues upon which this Court had not specifically passed.

As to the plaintiffs' contentions that this action is entirely separate from the other action which seeks damages, the record *in this case* shows affirmatively that the trial below was in effect the first part of a bifurcated procedure with the issue of damages yet to be tried. Conclusion of law No. 9 stated: "That the plaintiffs are entitled to damages from the defendants, if they can prove that they have been damaged at the future trial on the question of damages, which was reserved until a later date." Paragraphs 5 and 6 of the judgment and decree were as follows:

"5. That defendants are liable to plaintiffs for plaintiffs' damages arising out of the defendants' breach of the leases.

"6. That plaintiffs are entitled to their cost of suit, but same are hereby reserved until the later trial on plaintiffs' damages."

Moreover, plaintiffs' attorney stated to the trial court in reference to the existence of the two separate actions "[w]e think they should be [consolidated] because it is the same thing, and I would say we would merely treat our pleadings in 5963 as being a broadening." The court itself stated "we should dispose of one, and then see if there is anything left to dispose of in the other."

This appeal is not a multi-party multi-claim action, but a single claim between two parties. "The word 'claim' in Rule 54(b) refers to a set of facts giving rise to legal rights in the claimant, not to legal theories of recovery based upon those facts." *CMAX, Inc. v. Drewry Photocolor Corp.*, 295 F.2d 695, 697 (9th Cir. 1961). Where "each count sets forth a different legal theory, but each is based on the same transactions as evidenced in the contract and deed," there is but one claim. *Baca Land & Cattle Co. v. New Mexico Timber, Inc.*, 384 F.2d 701, 702 (10th Cir. 1967). In *Baca*, Count I sought a declaratory judgment of the parties' rights under the deed and contract, while Counts II and III were, as here, for damages:

"The relief sought under each count of the complaint depends in each instance on the rights of the parties which are determined to exist by virtue of the contract and deed. In each of the counts the duties of the parties result from the described instruments. Therefore, because each theory of the appellants arises out of the same transaction or occurrence, the pragmatic approach which all circuits apply directs us to conclude that the trial court's ruling is not appealable."

*Id.* at 702.

Here we have but a single claim, as defined by the foregoing authorities, seeking an adjudication of the validity of the leases, and dependent upon and incidental to that resolution, claims of damages. The determination that the leases are valid and that the State is liable for provable damages is a nonfinal judgment, and hence is not appealable. *Twin Falls County v. Knievel*, 98 Idaho 321, 563 P.2d 45 (1977); *Lloyd v. Lloyd*, 95 Idaho 108, 503 P.2d 308 (1972); *Viani v. Aetna Insurance Co.*, 95 Idaho 22, 501 P.2d 706 (1972); *Clear v. Marvin*, 83 Idaho 399, 363 P.2d 355 (1961).

Appeal dismissed. No costs allowed.

Before a full court. SHEPARD, J., sitting but not participating.